OPINION OF THE COURT
Leo F. Hayes, J.
This CPLR article 78 proceeding was brought by owners of several residences in the vicinity of 805 Comstock Avenue, Syracuse, New York. What is upsetting them is the city’s decision to issue a building permit to the owner of premises located at 805 Comstock Avenue, permitting him to renovate his property. They say that in approving the renovation plan, the city has violated the provisions of the local zoning ordinances limiting the right of a nonconforming user to extend, enlarge or change the way he uses his property. (Zoning Regulations of City of Syracuse, part C, § II, art II [3b].)
The subject premises is located in a Residential “B” zone, which permits multifamily dwellings, apartment houses or dormitories. Syracuse University, the previous owner, maintained the premises as a dormitory divided into 16 to 18 separate living units capable of housing 48 students. Sarkus, the present owner, intends to update and improve the premises and in so doing, create 15 living units or apartments capable of housing 35 students.
*617 Petitioners complain that the transition from a dormitory to an apartment house is an impermissible change of use. The city and the intervenor-owner urge the court to eschew semantics and focus instead on the “essential character” of the use.
Petitioners’ argument that the proposed renovation expands the former use beyond permissible limits is based on the assertion that for the first time the basement area of the building will be used as living space. Respondents say that use of the basement area had always been for purposes accessory to the multifamily character of the building, i.e., the basement was an integral part of the over-all dormitory operation.
The testimony showed that representatives of the Division of Buildings and Property Rehabilitation, the City County Planning Commission and the Corporation Counsel’s office considered the renovation plan before the Division of Buildings ultimately issued the subject building permit. These, of course, are the agencies responsible in the first instance for interpreting and enforcing of the zoning ordinance. Our review of this case therefore must follow the rule that the construction given by the agency responsible for its administration will be upheld if not irrational or irresponsible (Matter of John P. v Whalen, 54 NY2d 89, 95; Matter of Albert v Board of Stds. & Appeals, 89 AD2d 960, 962).
The issues here may therefore be framed as follows:
1. Was it irrational to conclude that the proposed renovation would make the same use of the building as previously?
2. Was it irrational to conclude that the proposed renovation would not extend the prior use beyond the permissible scope of the nonconforming use?
It is my determination, after considering all the testimony, that both questions must be answered in the negative.
While it is true that the applicable zoning ordinances distinguishes between dormitories and apartments, both of these uses are permitted in a Residential “B” zone. What is nonconforming about the premises is the parking and *618 density requirements of the zoning regulations, and neither of these aspects is affected by the proposed renovation. Assuming for the moment that apartments and dormitories are different uses under the ordinance, both of them nevertheless conform to the restrictions of a Residential “B” zone. So, substituting one for another merely changes one conforming use for another; it does not run afoul of the restraint against substituting one nonconforming use for another nonconforming use.
In any event, in light of the present circumstances the classification of “apartments” and “dormitories” is a distinction without a difference. Realistically what possible significance can attach to the fact that 35 students are going to be living in “apartments” whereas 48 students used to be living in a “dormitory”? The “essential character” of the building remains the same in either case (YM & YWHA of Mid-Westchester v Town of Eastchester, 201 NYS2d 622). In the world of nonconforming uses, it is okay for example to substitute a garage for a stable, and then a parking lot for the garage (People v Emigrant Ind. Sav. Bank, 261 App Div 402). Likewise here, there is no meaningful change wrought by the contemplated alterations.
There was conflicting testimony whether or not the basement area of the premises was ever used as living area for students. However, there is no doubt that the basement area was always used by the resident students for laundry, storage and as a study area. It is of no significance that some of these accessory uses formerly housed in the basement have now been incorporated into the living areas above, thus leaving the basement area free to be developed as apartments.
It has been clearly established by the proof that the entire structure has been and will be dedicated to purposes associated with its continued status as a nonconforming use. As such, the rearrangements brought about by the proposed renovation are within the scope of the former use and do not constitute an impermissible expansion thereof (Matter of Syracuse Aggregate Corp. v Weise, 51 NY2d 278, 285; Matter of Fairmeadows Mobile Vil. v Shaw, 16 AD2d 137, 142).
*619 Accordingly, I find that the decision to issue the building permit by the city to be a proper exercise of governmental authority permissible under the applicable local zoning regulations. Therefore, the petition seeking to annul same is dismissed.